**SIGNED THIS: November 1, 2012**

_____
**Mary P. Gorman
United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 12-70159 |
| WILLIAM A. MOORE and | ) | |
| KISSINDRA M. MOORE, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

**O P I N I O N**

Before the Court is the Debtors' Second Amended Chapter 13 Plan and the Objection to Confirmation of Debtors' Second Amended Chapter 13 Plan filed by American Express Centurion Bank and American Express Bank. Having considered the testimony presented at a confirmation hearing and the arguments of counsel, this Court concludes that the Debtors' Second Amended Chapter 13 Plan meets all requirements for confirmation and, accordingly, will be confirmed.

## I. Factual and Procedural Background

William A. Moore and Kissindra M. Moore ("Debtors") filed their voluntary petition under Chapter 13 on January 27, 2012. At the same time, they filed their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C"). The Form B22C disclosed that the Debtors had "over-the-median" income and, therefore, were subject to a 60-month applicable commitment period for the payment of their disposable income to unsecured creditors. The Form B22C calculations also result in a determination that the Debtors have $508.12 in projected monthly disposable income.

The Debtors filed their Chapter 13 Plan ("Plan") on February 10, 2012. The Plan provided for the Debtors to pay $750 per month for 60 months — a total of $45,000 — to the Chapter 13 Trustee. The Plan provided that the funds would be used to pay the Trustee's compensation, $2000 to the Debtors' attorney, and approximately $3850 to unsecured creditors. As the Plan provided that all secured creditors would be paid directly by the Debtors, the $3850 figure appears to be an error. The Plan drew an objection from American Express Centurion Bank and American Express Bank (collectively "American Express"). American Express claimed that the Debtors were not committing all of their disposable income to the Plan even though American Express interpreted the projected dividend to unsecured creditors to be $38,500 rather than the $3850 stated.

Debtors filed an Amended Chapter 13 Plan ("Amended Plan") on May 10, 2012. The Amended Plan proposed payments to the Trustee of $800 per month for 60 months and stated the expected dividend to unsecured creditors to be $41,632. American Express objected again on the same grounds.

The Second Amended Chapter 13 Plan ("Second Amended Plan") was filed by the Debtors on June 8, 2012. The Second Amended Plan also proposes $800 per month payments for 60 months but, in addition, includes a commitment from the Debtors to pay to the Trustee any tax refunds they

receive in excess of $1500 per year. Unsecured creditors are projected to receive $41,632 plus the tax refund monies net of Trustee commissions. The Second Amended Plan provides for payment of all secured creditors directly by the Debtors.

American Express filed its Objection to Confirmation of Debtors' Second Amended Chapter 13 Plan ("Objection") arguing that the Debtors have failed to commit all of their disposable income to their plan payments. American Express complains that the Debtors have improperly calculated their secured debt service with regard to their two vehicles and have taken deductions for the vehicles to which they are not entitled. Specifically, American Express claims that the Debtors are not entitled to claim vehicle ownership deductions for their two vehicles and that the Debtors should be required to "step up" plan payments after their vehicle loans have been paid.

A confirmation hearing on the Second Amended Plan was held on September 11, 2012. Kissindra Moore was the only witness to testify. Mrs. Moore acknowledged that she and her husband were the petitioners in this case and were seeking confirmation of their Second Amended Plan. She stated that since the case was filed, Mr. Moore has experienced serious health problems resulting in significant absences from work and several hospital stays. Although the Debtors have health insurance through Mr. Moore's employment, not all of his medical expenses have been covered. The Debtors currently owe $6392 for uncovered medical expenses incurred since filing and expect that amount to increase due to a recent hospitalization for which all of the billing has not yet been received. Because they have discovered that Mr. Moore's insurance does not provide full coverage for serious illnesses, the Debtors are now purchasing additional insurance through Mrs. Moore's employment at a cost of $180 per month. Mrs. Moore also testified that because Mr. Moore now has severe dietary restrictions, their monthly food bill has increased by $250. Finally, Mrs. Moore noted that although they had been limited to a $240 deduction for medical expenses on their Form B22C filed in January, the Debtors' actual out-of-pocket medical expenses at the time, as disclosed on their

Schedule J, was $300 per month. Accordingly, they have no excess left from the standard deduction for medical expenses available to cover the newly-incurred medical bills.

Mrs. Moore testified that the Debtors own a 2011 Honda Fit Sport automobile secured by a loan from American Honda Finance. On their schedules, the Debtors listed the indebtedness on the vehicle as $21,490 and identified their monthly payment as $372.18. The Debtors had 58 months left to pay on this debt when their case was filed. At line 47 of their Form B22C, they listed the average monthly payment on this debt, calculated over a 60-month term, to be $350. Mrs. Moore testified that since filing, Debtors have remained current on the payments of this debt.

Mrs. Moore testified that the Debtors also own a 2007 Honda Fit Sport financed through American Honda Finance. On their schedules, the Debtors reported owing $2831 on this vehicle and claimed that their monthly payments were $288.26. At line 47 of their Form B22C, Debtors deducted $41.67 as the average monthly payment on this debt if calculated over a 60-month term. Mrs. Moore testified that the Debtors had remained current on their payments of this debt and, just recently, made the last payment due on the obligation.

The Debtors' attorney stated on the record that based on the claims filed by American Honda Finance, the 60-month calculations he had made in computing the Debtors' disposable income might need slight adjustment. He stated that the 60-month payment on the 2011 vehicle would actually be $328 instead of the $350 used on Form B22C, and the payment on the 2007 vehicle should have been $40.87 instead of the $41.67. American Express did not object to the precise calculations of the 60-month payments and its attorney acknowledged that American Express used slightly but not meaningfully different numbers in its Objection.[1]

American Express presented no evidence at the confirmation hearing and relied instead on

---

[1] The Court will ignore the slight variations in the 60-month calculations made by the Debtors and American Express and, instead, will use the Debtors' original figures in its analysis. Use of any of the other figures cited would not change the outcome here.

-4-

the written arguments made in its Objection. The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. The consideration of whether to confirm a Chapter 13 plan is a core proceeding. *See* 28 U.S.C. §157(b)(2)(L).

## III. Legal Analysis

If the holder of an allowed unsecured claim objects to the confirmation of a plan, the plan cannot be confirmed unless the plan proposes to pay the objecting claimant in full or provides "that all of the debtor's projected disposable income to be received in the applicable commitment period…will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. §1325(b)(1). The Debtors scheduled American Express as the holder of two unsecured claims, and American Express Bank and American Express Centurion Bank each timely filed unsecured claims. Those claims have not been objected to by the Debtors or Trustee and, accordingly, are deemed allowed. *See* 11 U.S.C. §502(a). American Express as the holder of allowed unsecured claims has standing to object to the Debtors' Second Amended Plan and to require the Debtors to commit all of their projected disposable income to plan payments.

American Express objects to confirmation based on a series of complaints about how the Debtors treated their two vehicle loans in computing their projected disposable income. American Express first asserts that the Debtors must either take deductions on the Form B22C for the balances owed on their vehicles divided by the 60 months of the plan term or they must step up the amount of their payments to the Trustee as their vehicle loans are paid. Elsewhere in its Objection, American Express argues that even though the Debtors actually calculated their disposable income using their

loan balances divided by 60, they are still obligated to step up their payments as the loans are paid. American Express is right in the first instance but wrong in the second.

Debtors correctly divided the full amount due on each of their auto loans by 60 and deducted only those amounts at line 47 of Form B22C to calculate their disposable income. Regardless of how they cash flow their direct payments to secured creditors, their resulting disposable income calculation is accurate and does not understate what is available or what they are required to pay.

In making its second and incorrect point, American Express relies on a series of cases which require debtors to step up their Chapter 13 plan payments after completing payments on 401(k) loans. *See, e.g.*, *Burden v. Seafort* (*In re Seafort*), 437 B.R. 204, 213 (B.A.P. 6th Cir. 2010). But, the 401(k) loan and other similar cases are not on point. In the 401(k) loan cases, debtors have usually deducted the full of amount of their monthly loan payment from their monthly disposable income. *See id.* at 206; *see also Nowlin v. Peake* (*In re Nowlin*), 576 F.3d 258, 260-61 (5th Cir. 2009); *In re Smith*, 2009 WL 937144, at *3 (Bankr. C.D. Ill. Mar. 24, 2009). These loan payment deductions are frequently taken at line 31 of the Form B22C as mandatory employment deductions. But, line 31 allows the full monthly payment to be deducted regardless of how many months of payments remain due and does not require recalculation of a monthly amount based on the full plan term as is required for secured debt at line 47. Thus, when a 401(k) loan will be paid off before the end of the plan term, taking the full monthly payment as a deduction tends to skew the disposable income calculation.

To remedy this problem, courts have required debtors to "step up" their payments after the 401(k) loans are paid. *See Seafort*, 437 B.R. at 213; *Nowlin*, 576 F.3d at 267; *Smith*, 2009 WL 937144, at *3. In essence, because debtors have lowered or "stepped down" their plan payment in the early plan years in order to make their direct loan payments, they are required to "step up" their plan payments in later years to fully account for their disposable income. But here, despite the Debtors' proposal to make their auto loan payments directly, they proposed no "step down" in

payments to facilitate their ability to make those payments. Accordingly, they are not required to make a 'step up" in payments when those loans are paid, and their failure to provide for such a "step up" is not a valid basis to object to confirmation.

American Express next argues that even if the Debtors correctly calculated the deductions for their auto loan payments, they are not entitled to also take deductions at lines 28 and 29 of the Form B22C for standard vehicle ownership expenses. In making this argument, American Express relies on *Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716 (2011). *Ransom* does not, however, provide support for American Express' position.

Because Debtors have over-the-median income, the reasonable and necessary expense deductions they may claim when calculating their projected disposable income are taken, in part, from the National and Local Standards issued by the Internal Revenue Service ("IRS"). *See* 11 U.S.C. §§707(b)(2), 1325(b)(3). One of the available IRS Local Standards is for transportation ownership expenses and is available for up to two vehicles. It is not disputed that when this case was filed, the amount of the IRS Local Standard for vehicle ownership was $496 per vehicle.

At lines 28 and 29 of their Form B22C, Debtors claimed deductions for the Local Standard for vehicle ownership for both of their Honda automobiles. In order to avoid duplication of deductions for vehicle ownership costs, Form B22C requires that loan payment amounts taken as deductions at line 47 are subtracted from the Local Standard, and only the remainder of the Local Standard is then deducted as an expense at lines 28 and 29. Following that formula, the Debtors deducted $350 from the $496 Local Standard for the 2011 Honda, and at line 28 claimed $146 for transportation ownership. At line 29, Debtors deducted $41.67 from the $496 Local Standard and then claimed $454.33 for transportation ownership related to the 2007 Honda. American Express, relying on *Ransom*, asserts that Debtors are not entitled to either the $146 or the $454.33 deduction.

In *Ransom*, a Chapter 13 debtor, who owned an unencumbered vehicle with no loan or lease

payment associated with the vehicle ownership, claimed the IRS Local Standard for vehicle ownership on his Form B22C. An unsecured creditor objected to plan confirmation and, ultimately, the Supreme Court held that because the debtor owned "his car free from any debt or obligation, he may not claim the allowance." *Ransom*, 131 S. Ct. at 730. *Ransom* thus clearly stands for the principle that a debtor with no loan or lease payment for a vehicle may not claim the IRS Local Standard for transportation ownership when calculating disposable income. *Id.* Contrary to American Express' assertions, however, *Ransom* did not hold that a debtor with a loan or lease payment may deduct only the loan or lease payment and not the Local Standard amount. The Court specifically stated in *Ransom* that it declined to reach that issue because it was not properly before it. *Id.* at 728 n.8.

Under American Express' theory, no debtor could deduct the IRS Local Standard for transportation ownership. American Express' position is that debtors with no loan or lease payment get no deduction at all, and debtors with such payments may deduct only the amounts calculated as required by line 47. As support for its argument, American Express cites only to *Ransom* and misstates its holding. In the absence of any persuasive authority, this Court will not sustain American Express' Objection on this point. Rather, this Court finds that the Debtors correctly calculated their deductions for the IRS Local Standard for transportation ownership at lines 28 and 29 of their Form B22C.

Finally, American Express asserts that even if the Debtors are entitled to the IRS Local Standard deduction for transportation ownership, they are entitled to that deduction only for so long as they are actually making loan or lease payments. American Express states that because the Debtors had only 8 months of payments remaining on the 2007 Honda and 58 months of payments due on the 2011 Honda when they filed, they are entitled to the IRS Local Standard deduction only for those months and must adjust their disposable income calculation accordingly. In making this

argument, American Express relies on *Ransom* and on *Hamilton v. Lanning*, 130 S. Ct. 2464 (2010).

Generally, projected disposable income is calculated as of the date a case is filed. On the income side, "current monthly income" is determined by reference to the income received by a debtor during the six months preceding the filing. *See* 11 U.S.C. §§101(10A), 1325(b)(2). On the expense side, a debtor may deduct reasonable and necessary expenses which may be the debtor's actual expenses or, for higher income debtors, must be determined, at least in part, by reference to the IRS National and Local Standards. *See* 11 U.S.C. §1325(b)(3). In *Hamilton v. Lanning*, the Supreme Court held that changes in a debtor's income or expenses not taken into account under the statutory formulas but which have occurred by the time of confirmation or are "virtually certain" to occur may be considered when calculating disposable income and confirming a plan. *Lanning*, 130 S. Ct. at 2478.

American Express says that because the Debtors are scheduled to complete their auto loan payments in particular future months, then the satisfaction of the loans during the Debtors' applicable commitment period is virtually certain to occur. And, again relying on *Ransom*, American Express argues that if it is virtually certain that the loans will be paid, then after each loan is paid, the Debtors will no longer be entitled to the IRS Local Standard transportation expense deduction for the paid off vehicle.

In at least one case, *In re Montiho*, 466 B.R. 539 (Bankr. D. Haw. 2012), a court agreed with an argument similar to that which American Express makes here. In *Montiho*, the court decided in February 2012 that because the debtors' two auto loans would be paid in full with their April 2012 payments, satisfaction of the debts would "surely happen" and, therefore, the holding in *Lanning* was implicated. *Id.* at 541. Relying then on *Ransom*, the *Montiho* court found that the debtors should not be allowed to claim the IRS Local Standard deduction for transportation ownership expenses for the months after their auto loan payments had ceased. *Id.* at 541-42. The court suggested, however, that

its analysis might be different if the time between confirmation and the expected date for the loans to mature was longer. *Id.* at 541.

At the confirmation hearing, American Express' attorney presented no evidence regarding the Debtors' vehicles and did not cross-examine Mrs. Moore about the condition of the vehicles, the current mileage on the vehicles, or the amount of mileage expected to be driven in either vehicle over the short or long term. Instead, American Express asks this Court to determine solely as a matter of law and without regard to any actual facts, that because the vehicle loans are scheduled to be paid by certain dates, it is virtually certain that they will be paid by those dates.

With respect to the Debtors' loan on the 2011 Honda, American Express' argument must be wholly rejected. At the time of filing, the Debtors had 58 months left to pay on the loan for that vehicle and, at the confirmation hearing, the Debtors still had 50 months left to pay. The testimony from Mrs. Moore was that Mr. Moore's health is precarious and his ability to work is uncertain. Despite these problems, the Debtors have stayed current with their payments on this loan and with their payments to the Trustee. But, the Court heard no evidence or persuasive argument which could lead to the conclusion that the loan on the 2011 Honda is virtually certain to be paid as scheduled. This Court must find that trying to project what will occur over the next 50 months with respect to these Debtors and this loan is a speculative venture and not one that can be done with any certainty whatsoever. No adjustment needs to be made to the Debtors' disposable income calculation based on an expectation that the loan on their 2011 Honda will be paid in the 58th month of the applicable commitment period.

With respect to the loan on the 2007 Honda, the analysis is different. When the case was filed, the Debtors had 8 months of payments remaining due, but by the time of the confirmation hearing, the loan was paid. Thus, the Court need not speculate on whether a loan with 8 months — or some lesser number of months — left to pay is virtually certain to be paid. Rather, it is now

known that the loan is paid, and the Debtors will not have ownership expenses in the form of loan or lease payments for the 2007 Honda as they go forward. *Lanning* compels consideration of this change in circumstances and, under *Ransom*, Debtors are not entitled to take the IRS Local Standard transportation ownership expense deduction for the months after the loan was satisfied. Mrs. Moore said the last payment was in August so the Debtors would be entitled to the deduction for the first 8 months but not the last 52 months of their applicable commitment period.

Debtors argue that *Lanning* also compels consideration of the other changes in their circumstances which have occurred since filing. Mrs. Moore testified that commencing as of July 1, 2012, additional health insurance has been obtained through her employment at a cost of $180 per month. Health insurance premiums are properly deducted at line 39 of the Form B22C. The increased costs for health insurance Mrs. Moore described must be added to the disposable income calculation for the last 54 months of the applicable commitment period.

Mrs. Moore also testified that the Debtors have incurred post-petition medical bills not covered by insurance or the basic health care allowance on the Form B22C. The total of the bills was not yet known but, as of the confirmation hearing, the amount was at least $6392. Health care expenses of this type are properly deducted at line 36 of the Form B22C. Although the Debtors have not yet negotiated monthly payment amounts with the various health care providers involved, the total due can and will be considered in the recalculation of disposable income compelled by American Express' Objection.

Other testimony regarding the Debtors' changes in circumstances was either too vague or too speculative to be considered. Mrs. Moore said that the family food bill had increased about $250 per month. But, her testimony was as to actual expenditures rather than how that change related to the National Standard amount for food the Debtors had claimed on line 24A of their Form B22C. Mrs. Moore also stated that Mr. Moore had lost wages due to his health problems because he had used

all of his sick leave and had an unpaid waiting period before his short-term disability policy began to pay. But, she provided no specifics as to the amount of lost wages and did not testify about any expectation of future lost wages. These factors cannot, therefore, be considered in calculating the Debtors' projected disposable income.

### IV. Conclusion

The Debtors' Form B22C disclosed monthly projected disposable income of $508.12, which equates to $30,487.20 in projected disposable income required to be paid to unsecured creditors during the 60-month applicable commitment period. Based on the deletion of the IRS Local Standard for transportation ownership for the 2007 Honda for the last 52 month of the period, another $23,625.16 ($454.33 x 52) must be added to the disposable income amount. But, then the increased insurance premiums of $180 for 54 months — $9720 — must be subtracted along with the $6392 in unpaid post-petition medical bills. All of this ($30,487.20 + $23,625.16 - $9720 - $6392) results in $38,000.36 being the final amount of disposable income that the Debtors must commit to unsecured creditor payments in order to obtain plan confirmation. Debtors' Second Amended Plan provides that at least $41,632 will be available for unsecured creditors. Accordingly, the Second Amended Plan complies with all requirements for confirmation. The Debtors' Second Amended Chapter 13 Plan will be confirmed over the objection of American Express.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

See written Order.

###